1  LEE M. GORDON (SBN 174168)
   ELAINE T. BYSZEWSKI (SBN 222304)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   700 South Flower St., Suite 2940
3  Los Angeles, CA 90017-4101
   Telephone: (213) 330-7150
4  Facsimile: (213) 330-7152
        -and-
5  STEVEN W. BERMAN
   HAGENS BERMAN SOBOL SHAPIRO LLP
6  1301 Fifth Avenue, Suite 2900
   Seattle, WA 98101
7  Telephone: (206) 623-7292

8  [Additional Counsel Listed On Signature Page]

9  Attorneys for Plaintiffs

10

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14
   JASON MOSCHELLA, SAMUEL R. ALLRED, )   Case No.
15 HURR BAQRI, and DAVID SINGER,        )
   individually and on behalf of all others similarly ) **CLASS ACTION COMPLAINT FOR**
16 situated,                            )   **VIOLATIONS OF (1) STATE**
                                        )   **CONSUMER PROTECTION**
17                                      )   **STATUTES; (2) EXPRESS**
                       Plaintiffs,      )   **WARRANTY STATUTES; (3)**
18                                      )   **IMPLIED WARRANTY STATUTES;**
        v.                              )   **(4) NEGLIGENT**
19                                      )   **MISREPRESENTATION COMMON**
   APPLE COMPUTER, INC.,                )   **LAWS; AND (5) UNJUST**
20                                      )   **ENRICHMENT COMMON LAWS**
                                        )
21                     Defendant.       )   **JURY TRIAL DEMANDED**
                                        )
22

23

24

25

26

27

28

CLASS ACTION COMPLAINT            -1-

1    Plaintiffs JASON MOSCHELLA, SAMUEL R. ALLRED, HURR BAQRI, and DAVID

2    SINGER, for their Class Action Complaint on behalf of themselves and all others similarly

3    situated, upon personal knowledge as to facts pertaining to themselves and upon information and

4    belief as to all other matters, based on the investigation of his counsel, against Defendant APPLE

5    COMPUTER, INC. ("Defendant" or "Apple"), state as follows:

**I.**

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (2005). This Court also has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint emanates from this state, Defendant's principle executive offices are located in this state, and Defendant is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

2.    Venue in this Court is proper under 28 U.S.C. §1391 because Defendant's principle executive offices are located at 1 Infinite Loop, Cupertino, California 95014.

3.    Intradistrict assignment to the San Jose Division is proper because Defendant's principal executive offices are located within Santa Clara County.

**II.**

**NATURE OF ACTION**

4.    This consumer class action arises from Apple's deceptive and unlawful conduct in designing, manufacturing, distributing and selling defectively designed portable, digital music players. Specifically, Plaintiff brings this class action on behalf of a nationwide class of consumers who purchased Defendant's defective iPod Nano ("Nano") for consumer use, which Nanos are already excessively scratched. As a result of Defendant's defectively designed product, these Nanos have scratched excessively during normal usage, including Nano screens with impaired readability, and violating state consumer protection statutes, breaching express and implied

1    warranties that accompanied the Nanos, and causing Plaintiffs and proposed class members to

2    incur loss of use and monetary damages associated with the repair and/or replacement caused by

3    the defective design.  Plaintiffs and proposed class members would not have purchased Nanos

4    and/or paid as much for them had they known the truth about the product.

5         5.    Although Defendant knew that there were problems with the design of the Nano,

6    Defendant did not recall the defectively designed Nanos that had been sold to class members nor

7    the Nanos waiting for sale to other consumers.  Instead, Defendant permitted proposed class

8    members to purchase the defectively designed Nanos and passed the expense, hassle, and

9    frustration of replacing the defectively designed Nanos along to proposed class members.

10        6.    On behalf of themselves and all others similarly situated, Plaintiffs seek relief,

11   including:  (a) an order certifying the action to be maintained as a class action and ordering

12   Plaintiffs and their counsel to represent the class; (b) restitution and/or disgorgement; (c)

13   compensatory and consequential damages; (d) punitive damages; (d) attorneys' fees; (f) costs of

14   this suit; (g) pre and post judgment interest; and (h) such other and further relief as this Court may

15   deem necessary or proper.

**III.**

**PARTIES**

18        7.    Plaintiff JASON MOSCHELLA is a resident of the State of Massachusetts.  On or

19   about September 9, 2005, Plaintiff purchased a defective Nano designed, manufactured,

20   distributed, supplied and/or sold by Defendant.  The Nano is already excessively scratched despite

21   Plaintiff's reasonable and normal use of the product.   Plaintiff Moschella would not have

22   purchased it and/or paid as much for it had he know the truth about the product.

23        8.    Plaintiff SAMUEL R. ALLRED is a resident of the State of Idaho.  On or about

24   September 9, 2005, Plaintiff purchased a defective Nano designed, manufactured, distributed,

25   supplied and/or sold by Defendant.  The Nano is already excessively scratched despite Plaintiff's

26   reasonable and normal use of the product.  Plaintiff Allred would not have purchased it and/or paid

27   as much for it had he known the truth about the product.

28

9.      Plaintiff HURR BAQRI is a resident of the State of Florida.  On or about September 9, 2005, Plaintiff purchased a defective Nano designed, manufactured, distributed, supplied and/or sold by Defendant.  The Nano is already excessively scratched despite Plaintiff's reasonable and normal use of the product.  Plaintiff Baqri would not have purchased it and/or paid as much for it had he known the truth about the product.

10.     Plaintiff DAVID SINGER is a resident of the State of Florida.  On or about September 13, 2005, Plaintiff purchased a defective Nano designed, manufactured, distributed, supplied and/or sold by Defendant.  The Nano is already excessively scratched despite Plaintiff's reasonable and normal use of the product.  Plaintiff Singer would not have purchased it and/or paid as much for it had he known the truth about the product.

11.     Defendant has been and still is engaged in the business of designing, manufacturing, and marketing of personal computers and related software, services, peripherals, and networking solutions worldwide.  It also designs, develops, and markets a line of portable, digital music players along with related accessories and services, including the online distribution of third-party music and audio books.  Apple is a Delaware Corporation with its principal executive offices at 1 Infinite Loop, Cupertino, CA 95014.

## IV.

## GENERAL ALLEGATIONS

12.     In late 2001, Apple launched a new product called the iPod.  By the end of 2001, Apple had already sold as many as 125,000 new iPod portable music players and was working on the next generation for release in mid-2002.  Over the next few years Apple responded to increased demand and staunch competition by redesigning the original iPod multiple times as well as developing and releasing new "sister" products such as the iPod Mini, iPod Shuffle, and finally in September 2005 releasing the highly anticipated Nano.

13.     The Nano is .27 inches thick and weighs 1.5 ounces.  Apple has advertised and marketed the Nano as being impossibly small and durable, while allowing all of the conveniences and features their customers have come to expect in the iPod series of products.  Unfortunately their customers have been disappointed as the Nano does not function as advertised by Apple.

14.    In a television advertisement broadcast throughout North America, prior to and immediately following the release of the Nano, Steve Jobs, the co-founder of Apple, is shown using the Nano and specifically removing it from his pocket.  Seemingly, this television advertisement was designed to tout the durability and convenience, due to size, of the Nano.  By advertising the product in this way, Defendant led its consumers to believe that the Nano was in fact durable enough to put it in your pocket, briefcase, backpack, etc., without doing irreparable damage to the device.

15.    The Nano screen, however, scratches excessiviely even when used in its normal intended manner.  And it scratches so excessively that the items shown on the screen become distorted and/or unreadable by the user.  In fact, if users were to put their Nanos in their pockets with common items such as coins, keys, a money clip, a credit card, or even the earphones that accompany the Nanos, the devices would likely be scratched so badly that viewing the screens would be extremely difficult, if not impossible.

16.    The Nano was defectively designed by Defendant.  This defective design causes the Nano to scratch, resulting in irreparable damage to the Nano's screen, during foreseeable and normal usage. Each of the iPods in the series of portable, digital music players sold by Defendant prior to the Nano have been covered with a film of plastic resin, in order to protect the device from scratching and other damage.  In designing the Nano, the goal of Defendant was to create a device much smaller than it predecessors in order to attract new and repeat customers.  In doing so, Defendant, in an attempt to drastically reduce the size of the Nano, redesigned the housing of previous iPod models, of which the screen and controls were separate from the casing, into a seamless front where the screen and controls reside under the resin covering the entire device.

17.    The defect of the Nano lies within this resin.  On previous versions of the iPod series of devices, the resin has been much thicker and stronger. The amount and durability of the resin applied as a protective coating during the Nano manufacturing process is clearly defective in that it is not sufficient to adequately protect the face of the Nano from extreme scratching and ultimately irreparable damage.

18.    Although it was clear that the Nano was defective, with fierce competition in the digital music industry, Apple decided not to delay the release of the defectively designed Nano, but to pass the cost of replacing the defective product along to class members. Moreover, rather than admit the design flaw when consumers began to express widespread complaints about the screen's propensity to scratch easily and excessively (and rather than agreeing to replace them as Apple had done with respect to Nanos with cracked screens), Apple concealed the defect and advised class members that they would need to purchase additional equipment to prevent the screen from scratching excessively.

19.    The representative Plaintiffs purchased their Nanos upon release in September of 2005 and used their Nanos in a foreseeable manner and in the manner in which they are intended to be used. The Nanos that they purchased became excessively scratched within days (if not hours), and the scratches now impair the usability of the products. Thus, each representative Plaintiff has suffered an economic loss from his purchase of a Nano that he would not have purchased and/or paid as much for in the first place had he known the truth about the product.

20.    Defendant has been made aware of the design defect through numerous consumer complaints. Due to Defendant's lack of response in resolving this widespread problem, consumers have taken to posting their complaints on the internet, in an attempt to somehow inform others about the problem:

**Consumer Frustration**

I received my black 4 GB Nano on Monday. By Monday night, despite the fact that I had treated it delicately and barely handled it, I noticed tons of fine scratches in the finish - like you see on a car's clear coat. The only thing I'd wiped it with (because it gets grungy-looking from even minimal handling) was a clean, micro-fiber lens cloth. I used my Nano maybe three times, kept it in a soft-lined case when it wasn't in use, and by Friday I noticed more scratches, including over the screen area. I did some research (links below) and saw I wasn't alone - and worse, that users were finding the gorgeous LCD screen obscured by scratches in the clear plastic overlay after a few weeks of normal (putting it in a pocket, wiping with a t-shirt) use... Also, although it's tempting to put it in your pocket (it fits perfectly in the tiny coin pocket on jeans), a lot of people report major scratches and even cracked LCDs from doing so. Steve Jobs pulled a Nano out of his pocket

when they announced it, implying it is an acceptable way to carry it, but I wouldn't.".[1]

* * *

I'm really sick of Apple's response to this problem !!! I contacted customer relations and some guy said that he did not even hear or was aware of any Nano scratch issues.[2]

* * *

Like pretty much everyone else that has an Nano, mine has scratches all over the screen and the body after 1 week of having it. This is highly disappointing, especially from a company from Apple who is known for user-friendly product. I would think with all the technology Apple has come up with, it can find a way (or get someone who does) to have a scratch resistant screen (like those on watches). Or at least ship your iPod with a skin included (which probably costs less than $1 to make). A very loyal and dissasti[s]fied customer. (owner of 2 iPods and iBook).[3]

* * *

Went down to Mac store and confirmed that Nano was indeed full of scratches. And I was easily able to scratch it with a light touch... These things happen all the time (I do industrial design for living..) Wrong choice of material!!!
Curious though.. Consumer products like MP3 players usually go through beta testing and feedback/re-design loop before market release... Wonder how no one at Apple noticed it... I never planned on buying one, but still, seeing a scratched unit got me disgusted.[4]

* * *

What's the key selling point of the nano over other players of similar size and sound quality (or any Apple product over its competition)? A refined form and slick interface. Fun stuff but if that's the point, scratches won't do. If the key selling points are easily corrupted, its just another beta sold to the "gotta have it now" crowd...[5]

* * *

Get a clue. The scratching of the Nano goes way beyond normal for a plastic product with an LCD screen. I've got plenty of devices with tiny LCD screens that I've had and used for years and they are all clear and scratch free enough to see everything from corner to corner. There's clearly something substandard about the material used in the Nano.[6]

* * *

---

[1]
http://www.macworld.com/forums/ubbthreads/showthreaded.php?Board=newsthread&Number=35 5931
[2] http://discussions.info.apple.com/webx?14@28.Bff6anI11s5.0@.68b94d61/714
[3] http://discussions.info.apple.com/webx?128@2.G0UzaDuhUya.0@.68b94d61
[4] http://discussions.info.apple.com/webx?128@2.G0UzaDuhUya.0@.68b94d61
[5] http://discussions.info.apple.com/webx?128@2.G0UzaDuhUya.0@.68b94d61
[6] http://discussions.info.apple.com/webx?14@28.Bff6anI11s5.0@.68b94d61/714

I will never buy apple again. I'm so disappointed this is my FIRST apple purchase, why couldn't I have seen this thread first? Arg, guess all i'm left to do is to spread the word of pure dissatisfaction until they come up with something to amend this tragedy.[7]

* * *

I dare not take the plastic cover off of the screen/click wheel and only once have I removed it from the plastic wrap encasing the entire product. My hope is that a resolution will be offered soon as users should not be expected to spend $250 plus tax on a product that they need to either baby or accept as a piece of junk, I see neither of those as viable options for a product that bares the name and reputation of Apple and iPod.[8]

21.     The problem was also recently featured in an online Wall Street Journal article:

*You and other writers gave the Apple iPod nano a rave review. But my nano is badly scratched up after only a couple of weeks of careful use, and there are lots of similar reports online. What's going on?*

A: Based on my own experience of about a month with the product, and emails I've received from readers, I believe the tiny, thin iPod nano is much more prone to scratching than earlier iPods, even though they, too, picked up scratches.

If I were reviewing the nano today, I would still call it "the best combination of beauty and functionality of any music player I've tested," as I did in my review. But I would include a strong, prominent, warning that it scratches too easily in normal usage. This is a real downside to an otherwise excellent product.

My review of the nano ran on Sept. 8, and was based on four days of tests with an evaluation unit lent me by Apple. I bought my own nano the next day. The test nano, a new production model delivered in the box, picked up some scratches in testing, like any iPod, but nothing out of the ordinary or which impacted functionality.

But, after just under a month of daily use, my own nano is badly scratched, and looks beat up when viewed at an angle. Worse, there are several large scratches across the screen that impede functionality by making text and photos slightly harder to see. I have never tested or owned any portable electronic device that picked up as many scratches as quickly as the iPod nano.

Like the previous iPods I've owned, my nano has never been sheathed in a case. Like the others, I carry the nano -- by itself -- in my pants or jacket or shirt pockets; or loosely in a briefcase or carry-on travel bag, in a pocket

---

[7] http://discussions.info.apple.com/webx?128@2.G0UzaDuhUya.0@.68b94d61
[8] http://discussions.info.apple.com/webx?128@2.G0UzaDuhUya.0@.68b94d61

containing no other hard objects. This is also how I carry my Treo smart phone, whose screen is free of scratches after much longer and harder use than the nano's. My nano hasn't been dropped or scraped. Yet it is badly scratched.

My recommendation now is that nano owners must buy and use a case for the device. That's a shame with a product as beautiful and sleek like this, because it ruins the look and feel of the thing and adds to the cost. But I don't consider it optional.

Apple says it uses exactly the same clear coating on the nano as on some earlier iPods, and that its engineers have conducted tests that show the nano isn't any more vulnerable to scratches than other current iPods. Apple also says it hasn't had a large number of complaints about scratching on the nano.

Company officials speculate that, because cases for the nano aren't being sold in volume yet, early buyers who would normally protect an iPod with a case haven't been able to do so with the nano. They also suggest that, because of its small size, some users may have carried it in places and ways that differ from how they carried larger iPods, and which increased the possibility of scratching.

I can't dispute any of that, but I believe that something about the size and weight of the nano, and therefore the way it is used and behaves when carried, is making the coating Apple applies far less effective than it is with larger iPods.

I believe Apple should include a strong, thin case with every nano, starting as soon as possible. And Apple should research some sort of tougher coating for future nano models.[9]

22.    Despite an overwhelming number of complaints, Defendant has failed to remedy the problem in any meaningful way. In fact, many of the complaints sited above are from Defendant's own website. Not only has Defendant chosen not to remedy this defect but it has begun deleting posts relating to the scratching defect on its website's forum and has locked numerous chat threads in an attempt to limit the effect on the sales of the Nano. Therefore, Defendant is not only ignoring the defect but is hindering the communication of its customers with regard to this defect in an attempt to sell more Nanos.

23.    These incidents experienced by the class members evidence an ongoing problem experienced by purchasers of the Nano. These problems, created by a defect within the design of the Nano, were apparent to Defendant, but instead of recalling and/or replacing the product they are choosing to ignore it, causing damage to class members and additional financial gain for itself.

---

[9] http://online.wsj.com/article/SB112855984185861237.html

1                                                    V.

2                              CLASS ACTION ALLEGATIONS

3          24.    Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules

4   of Civil Procedure, on behalf of themselves and a Class defined as follows:

5              **Each and every person and/or entity residing in the United States who**
               **purchased an iPod Nano portable, digital music player (Nano) made**
6              **with any process that has resulted in defective products.**

7              **Excluded from the Class are (i) Defendant, any entity in which**
               **Defendant has a controlling interest or which has a controlling interest**
8              **in Defendant, and Defendant's legal representatives, predecessors,**
               **successors, assigns, and employees, (ii) any person or entity whose**
9              **purchase was made in the State of California, and (iii) the judge and**
               **staff to whom this case is assigned, and any member of the judge's**
10             **immediate family.**

11         25.    The definition of the Class is unambiguous. Plaintiff is a member of the Class that

12  he seeks to represent. Members of the Class can be identified using Defendant's records of retail

13  sales and other information that is kept by Defendant in the usual course of business and/or in the

14  control of Defendant. Records kept by Defendant identify the class members who purchased

15  Nanos in a retail transaction. Class members can be notified of the class action through publication

16  and direct mailings to address lists maintained in the usual course of business by Defendant.

17         26.    Class members are so numerous that their individual joinder is impracticable. In

18  fact, Timothy D. Cook, the executive Vice President for worldwide sales and operations, called the

19  demand for the Nano "staggering," and said Apple sold more than a million units in the 17 days of

20  the fourth quarter [2005] that it was available. Apple, which has roughly 75 percent of the

21  worldwide share of portable music players, shipped a total of 6.5 million iPods in the quarter, an

22  increase from two million in the quarter last year.[10]  The precise number of class members is

23  unknown to Plaintiff, but it is clear that the number greatly exceeds the number to make joinder

24  impossible.

25         27.    Common questions of law and fact predominate over the questions affecting only

26  individual Class Members. Some of the common legal and factual questions include:

27  _____

[10] http://www.nytimes.com/2005/10/12/technology/12apple.html
28

(a)     Whether Apple's Nano portable music players were defectively designed in that they were susceptible to excessive scratching that adversely affects the readability of the screen;

(b)     Whether Defendant knew or should have known that the Nanos were defectively designed;

(c)     Whether Defendant knowingly concealed the defective design of the Nano;

(d)     Whether Defendant engaged in illegal business practices by failing to recall or sufficiently repair the defective Nano without charging the class members;

(e)     Whether Defendant refused to recall the defectively designed Nano in order to increase the sales of new portable, digital music players;

(f)     Whether Defendant misrepresented the durability and usefulness of the Nano;

(g)     Whether Defendant misrepresented that it had a price and/or size advantage in comparison to its competitors when it did not because its product was not comparable to the products of its competitors due to the Nano's susceptibility to excessive scratching that impairs screen readability;

(h)     Whether Defendant violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

(i)     Whether Defendant violated express and implied warranty statutes;

(j)     Whether Defendant violated the common laws of negligent misrepresentation and unjust enrichment; and

(k)     The nature and extent of damages and other remedies to which the conduct of Defendant entitles the class members.

28.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the class members. Similar or identical defective designs, statutory and common law violations, deceptive business practices, and defective products are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

29.     The injuries sustained by the class members flow, in each instance, from a common nucleus of operative facts; Defendant's misconduct. In each case Defendant designed, manufactured, supplied and/or sold defective Nano portable music players.

30.     The class members have been damaged by Defendant's misconduct. The class members have purchased defectively designed Nano portable music players. Many of the class members have been required to prematurely purchase a new properly-designed portable music

players or protective coverings for their devices due to the fact that the defectively designed Nanos were unable to withstand their normal, foreseeable and intended usage. The class members would not have purchased the Nanos and/or paid as much had they known the truth about the product.

31.    Plaintiffs' claims are typical of the claims of the other proposed class members. Each Plaintiff purchased a Nano manufactured by Defendant that was prone to excessive scratching during normal and foreseeable use, causing significant product damage (to the viewing screen, for example, and among other things) and limited future use, as a result of the defective design of the Nano.

32.    Plaintiffs will fairly and adequately protect the interests of the proposed Class. Plaintiffs are familiar with the basic facts that form the bases of the proposed class members' claims. Plaintiffs' interests do not conflict with the interests of the other class members that they seek to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the proposed class members.

33.    The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the proposed class members. The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. Furthermore, it would be virtually impossible for the class members to seek redress on an individual basis. Even if the class members themselves could afford such individual litigation, the court system could not.

34.    Individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the class members' claims and the absence of material differences in the state statutes and common laws upon which the proposed class members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

CLASS ACTION COMPLAINT                    -12-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Violation Of The State Consumer Protection Laws)

35.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of himself and members of the proposed Class.

36.    Plaintiffs and the members of the proposed Class are consumers who purchased goods (Nanos) from Defendant for, *inter alia*, personal, family, or household purposes.

37.    Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion, and sale of Nanos to Plaintiff and the proposed class members.

38.    Defendant violated this duty by misrepresenting the characteristics, uses, benefits, quality, durability and usefulness of Nanos and omitting to disclose the Nano's susceptibility to extreme scratching from normal usage.

39.    Plaintiffs and members of the proposed Class were directly and proximately injured by Defendant's conduct and would not have purchased Nanos and/or paid as much for them had they known the true nature of the product.

40.    Defendant's deceptive representations and material omissions to Plaintiffs and the proposed class members were, and are unfair and deceptive acts and practices.

41.    Defendant engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiffs and the proposed class members.

42.    Plaintiffs and the proposed class members were deceived by Defendant's misrepresentations.

43.    As a proximate result of Defendant's misrepresentations, Plaintiffs and the proposed class members have suffered an ascertainable loss and are entitled to relief, in an amount to be determined at trial.

44.    Defendant's actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of various state consumer protection statutes listed below:

1       (a)    Defendant has engaged in unfair competition or unfair or deceptive acts or

2   practices in violation of Ala. Code § 8-19-1, *et seq.*;

3       (b)    Defendant has engaged in unfair competition or unfair or deceptive acts or

4   practices in violation of Alaska Stat. Code § 40.50.471, *et seq.*;

5       (c)    Defendant has engaged in unfair competition or unfair or deceptive acts or

6   practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*;

7       (d)    Defendant has engaged in unfair competition or unfair or deceptive acts or

8   practices in violation of Ark. Code § 4-88-101, *et seq.*;

9       (e)    Defendant has engaged in unfair competition or unfair or deceptive acts or

10   practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

11       (f)    Defendant has engaged in unfair competition or unfair or deceptive acts or

12   practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

13       (g)    Defendant has engaged in unfair competition or unfair or deceptive acts or

14   practices in violation of 6 Del. Code § 2511, *et seq.*;

15       (h)    Defendant has engaged in unfair competition or unfair or deceptive acts or

16   practices in violation of D.C. Code § 28-3901, *et seq.*;

17       (i)    Defendant has engaged in unfair competition or unfair or deceptive acts or

18   practices in violation of Fla. Stat. § 501.201, *et seq.*;

19       (j)    Defendant has engaged in unfair competition or unfair or deceptive acts or

20   practices in violation of Ga. Stat. § 10-1-392, *et seq.*;

21       (k)    Defendant has engaged in unfair competition or unfair or deceptive acts or

22   practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

23       (l)    Defendant has engaged in unfair competition or unfair or deceptive acts or

24   practices in violation of Idaho Code § 48-601, *et seq.*;

25       (m)    Defendant has engaged in unfair competition or unfair or deceptive acts or

26   practices in violation of 815 ILCS § 505/1, *et seq.*;

27       (n)    Defendant has engaged in unfair competition or unfair or deceptive acts or

28   practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

1        (o)     Defendant has engaged in unfair competition or unfair or deceptive acts or

2    practices in violation of Iowa Code § 714.1b, *et seq.*;

3        (p)     Defendant has engaged in unfair competition or unfair or deceptive acts or

4    practices in violation of Kan. Stat. § 50-623, *et seq.*;

5        (q)     Defendant has engaged in unfair competition or unfair or deceptive acts or

6    practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

7        (r)     Defendant has engaged in unfair competition or unfair or deceptive acts or

8    practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

9        (s)     Defendant has engaged in unfair competition or unfair or deceptive acts or

10    practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

11        (t)     Defendant has engaged in unfair competition or unfair or deceptive acts or

12    practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

13        (u)     Defendant has engaged in unfair competition or unfair or deceptive acts or

14    practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

15        (v)     Defendant has engaged in unfair competition or unfair or deceptive acts or

16    practices in violation of Mich. Stat. § 445.901, *et seq.*;

17        (w)     Defendant has engaged in unfair competition or unfair or deceptive acts or

18    practices in violation of Minn. Stat. § 325F.67, *et seq.*;

19        (x)     Defendant has engaged in unfair competition or unfair or deceptive acts or

20    practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

21        (y)     Defendant has engaged in unfair competition or unfair or deceptive acts or

22    practices in violation of Vernon's Mo. Rev. Stat. § 407.010, *et seq.*;

23        (z)     Defendant has engaged in unfair competition or unfair or deceptive acts or

24    practices in violation of Mont. Code § 30-14-101, *et seq.*;

25        (aa)     Defendant has engaged in unfair competition or unfair or deceptive acts or

26    practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

27        (bb)     Defendant has engaged in unfair competition or unfair or deceptive acts or

28    practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

1                (cc)    Defendant has engaged in unfair competition or unfair or deceptive acts or

2  practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

3                (dd)    Defendant has engaged in unfair competition or unfair or deceptive acts or

4  practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

5                (ee)    Defendant has engaged in unfair competition or unfair or deceptive acts or

6  practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

7                (ff)    Defendant has engaged in unfair competition or unfair or deceptive acts or

8  practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

9                (gg)    Defendant has engaged in unfair competition or unfair or deceptive acts or

10  practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

11                (hh)    Defendant has engaged in unfair competition or unfair or deceptive acts or

12  practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

13                (ii)    Defendant has engaged in unfair competition or unfair or deceptive acts or

14  practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

15                (jj)    Defendant has engaged in unfair competition or unfair or deceptive acts or

16  practices or made representations in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

17                (kk)    Defendant has engaged in unfair competition or unfair or deceptive acts or

18  practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

19                (ll)    Defendant has engaged in unfair competition or unfair or deceptive acts or

20  practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

21                (mm)  Defendant has engaged in unfair competition or unfair or deceptive acts or

22  practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

23                (nn)    Defendant has engaged in unfair competition or unfair or deceptive acts or

24  practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

25                (oo)    Defendant has engaged in unfair competition or unfair or deceptive acts or

26  practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

27                (pp)    Defendant has engaged in unfair competition or unfair or deceptive acts or

28  practices in violation of Tenn. Code § 47-18-101, *et seq.*;

1       (qq)    Defendant has engaged in unfair competition or unfair or deceptive acts or

2  practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

3       (rr)    Defendant has engaged in unfair competition or unfair or deceptive acts or

4  practices in violation of Utah Code Ann. § 13-1 1-1, *et seq.*;

5       (ss)    Defendant has engaged in unfair competition or unfair or deceptive acts or

6  practices in violation of Vt. Stat. Ann. tit. 9, § 245 1, *et seq.*;

7       (tt)    Defendant has engaged in unfair competition or unfair or deceptive acts or

8  practices in violation of Va. Code § 59.1-196, *et seq.*;

9       (uu)    Defendant has engaged in unfair competition or unfair, deceptive acts or

10  fraudulent acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

11       (vv)    Defendant has engaged in unfair competition or unfair or deceptive acts or

12  practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

13       (ww)  Defendant has engaged in unfair competition or unfair or deceptive acts or

14  practices in violation of Wis. Stat. § 100.20, *et seq.*; and

15       (xx)    Defendant has engaged in unfair competition or unfair or deceptive acts or

16  practices in violation of Wyo. Stat. § 40-12-100, *et seq.*

17     45.    Plaintiffs and members of the proposed Class were injured by Defendant's conduct,

18  which created artificial demand for Nanos at an artificially inflated price.  As a direct and

19  proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or

20  practices, Plaintiffs and the proposed Class have suffered actual economic loss by paying for

21  Nanos at an artificially inflated price.  Plaintiff and the proposed class members are entitled to

22  damages, restitution, disgorgement, and/or such orders or judgments as may be necessary to restore

23  to any person in interest, any money which may have been acquired by means of such unfair

24  practices and to the relief set forth below.

25                  **SECOND CAUSE OF ACTION**

26                  **(Breach Of State Express Warranties)**

27     46.    The preceding paragraphs of this Complaint are realleged and incorporated by

28  reference and asserted by Plaintiffs on behalf of himself and members of the proposed Class.

1    47.    Defendant expressly represented and warranted to Plaintiffs and members of the

2  proposed Class, by and through statements, descriptions, and affirmations of fact made by

3  Defendant or its authorized agents or sales representatives, orally and in writing on product

4  packaging and in product advertisements and marketing materials and other written materials

5  intended for the general public, that the Nano was durable, effective, and fit and proper for its

6  intended use.  For example, Apple warrants that its portable, digital music players against

7  "[d]efects in materials and workmanship in...new 'Products' manufactured, sold or certified by

8  Apple Computer, Inc...."  This express warranty runs to every "first end-user purchaser."  The

9  aforementioned documents and others containing express warranties regarding Nanos and their

·10  usage were created by and at the direction of Apple.

11    48.    In reliance upon said warranties, Plaintiffs and the proposed class members

12  purchased said product.

13    49.    At the time it made such express warranties, Apple knew the purpose for which

14  Nanos were intended to be used and warranted Nanos as effective and proper for such purpose.

15    50.    Defendant knew and had reason to know that Nanos did not conform to these

16  express representations because Nanos are neither as durable nor as useable as Defendant

17  represented.

18    51.    Nanos did not conform to Apple's promises, descriptions or affirmations of fact, nor

19  were they fit for the ordinary purpose for which they were sold and used.  Nevertheless, Defendant

20  continued to market Nanos by means of false and misleading information without regard to their

21  actual durability and usability.

22    52.    As explained above, the Nano was defective "in materials and workmanship"

23  because the material used as a protective coating on the face of the Nano is not sufficient to resist

24  scratching caused during normal and foreseeable usage.  Additionally, the design of the Nano

25  breached Defendant's express warranty in that the Nanos were defective in workmanship.

26    53.    The class members have been damaged by Defendant's breach of express warranties

27  to the class members.

28

CLASS ACTION COMPLAINT                    -18-

1    54.    Defendant's actions, as complained of herein, violate various state statutes listed

2  below:

3        (a)    Apple's sale and promotion of the Nano constitutes a breach of express

4  warranty in violation of Ala. Code § 7-2-313.

5        (b)    Apple's sale and promotion of the Nano constitutes a breach of express

6  warranty in violation of Ak. St. § 45.02.313.

7        (c)    Apple's sale and promotion of the Nano constitutes a breach of express

8  warranty in violation of Ariz. Rev. Stat. Ann. § 47-2313.

9        (d)    Apple's sale and promotion of the Nano constitutes a breach of express

10  warranty in violation of Ark. Code Ann. § 4-2-313.

11        (e)    Apple's sale and promotion of the Nano constitutes a breach of express

12  warranty in violation of Co. Rev. St. § 4-2-313.

13        (f)    Apple's sale and promotion of the Nano constitutes a breach of express

14  warranty in violation of Conn. Gen. Stat. Ann. § 42a-2-313.

15        (g)    Apple's sale and promotion of the Nano constitutes a breach of express

16  warranty in violation of 6 Del. C. § 2-313.

17        (h)    Apple's sale and promotion of the Nano constitutes a breach of express

18  warranty in violation of D.C. Stat. § 28:2-313.

19        (i)    Apple's sale and promotion of the Nano constitutes a breach of express

20  warranty in violation of Fla. Stat. Ann. § 672.313.

21        (j)    Apple's sale and promotion of the Nano constitutes a breach of express

22  warranty in violation of Ga. Code Ann. § 11-2-313.

23        (k)    Apple's sale and promotion of the Nano constitutes a breach of express

24  warranty in violation of Haw. Rev. Stat. § 490:2-313.

25        (l)    Apple's sale and promotion of the Nano constitutes a breach of express

26  warranty in violation of Id. Stat. § 28-2-313.

27        (m)    Apple's sale and promotion of the Nano constitutes a breach of express

28  warranty in violation of 810 ILCS 512-313.

1      (n)    Apple's sale and promotion of the Nano constitutes a breach of express

2  warranty in violation of Ind. Code § 26-1-2-313.

3      (o)    Apple's sale and promotion of the Nano constitutes a breach of express

4  warranty in violation of Iowa Code Ann. § 554.2313.

5      (p)    Apple's sale and promotion of the Nano constitutes a breach of express

6  warranty in violation of Kansas Stat. Ann. § 84-2-313.

7      (q)    Apple's sale and promotion of the Nano constitutes a breach of express

8  warranty in violation of Ken. Rev. Stat. § 355.2-313.

9      (r)    Apple's sale and promotion of the Nano constitutes a breach of express

10  warranty in violation of La. Civ. Code Ann. art. 2520.

11      (s)    Apple's sale and promotion of the Nano constitutes a breach of express

12  warranty in violation of 11 Maine Rev. Stat. Ann. § 2-313.

13      (t)    Apple's sale and promotion of the Nano constitutes a breach of express

14  warranty in violation of Md. Com. Law Code Ann. § 2-313.

15      (u)    Apple's sale and promotion of the Nano constitutes a breach of express

16  warranty in violation of Mass. Gen. Laws Ann. 106 § 2-313.

17      (v)    Apple's sale and promotion of the Nano constitutes a breach of express

18  warranty in violation of Mich. Comp. Laws Ann. 440.2313b.

19      (w)    Apple's sale and promotion of the Nano constitutes a breach of express

20  warranty in violation of Minn. Stat. Ann. § 336.2-313.

21      (x)    Apple's sale and promotion of the Nano constitutes a breach of express

22  warranty in violation of Miss. Code Ann. § 75-2-313.

23      (y)    Apple's sale and promotion of the Nano constitutes a breach of express

24  warranty in violation of Missouri Ann. Stat. 400.2-313.

25      (z)    Apple's sale and promotion of the Nano constitutes a breach of express

26  warranty in violation of Mont. Code Ann. 30-2-313.

27      (aa)   Apple's sale and promotion of the Nano constitutes a breach of express

28  warranty in violation of Neb. Rev. Stat. § 2-313.

CLASS ACTION COMPLAINT                    -20-

1    (bb)   Apple's sale and promotion of the Nano constitutes a breach of express
2    warranty in violation of Nev. Rev. Stat. 104.2313.

3    (cc)   Apple's sale and promotion of the Nano constitutes a breach of express
4    warranty in violation of N.H. Rev. Stat. § 382-A:2-313.

5    (dd)   Apple's sale and promotion of the Nano constitutes a breach of express
6    warranty in violation of N.J. Stat. Ann. 12A:2-313.

7    (ee)   Apple's sale and promotion of the Nano constitutes a breach of express
8    warranty in violation of N.M. Stat. Ann. § 55-2-313.

9    (ff)   Apple's sale and promotion of the Nano constitutes a breach of express
10   warranty in violation of N.Y. U.C.C. Law § 2-313.

11   (gg)   Apple's sale and promotion of the Nano constitutes a breach of express
12   warranty in violation of N.C. Gen. Stat. Ann. § 25-2-313.

13   (hh)   Apple's sale and promotion of the Nano constitutes a breach of express
14   warranty in violation of N.D. Stat 41-02-30.

15   (ii)   Apple's sale and promotion of the Nano constitutes a breach of express
16   warranty in violation of Ohio Rev. Code Ann. § 1302.26.

17   (jj)   Apple's sale and promotion of the Nano constitutes a breach of express
18   warranty in violation of Okla. Stat. Ann. tit. 12A, § 2-313.

19   (kk)   Apple's sale and promotion of the Nano constitutes a breach of express
20   warranty in violation of Or. Rev. Stat. § 72.3130.

21   (ll)   Apple's sale and promotion of the Nano constitutes a breach of express
22   warranty in violation of Pa. Stat. Ann. tit. 13, § 2313.

23   (mm)  Apple's sale and promotion of the Nano constitutes a breach of express
24   warranty in violation of R.I. Stat. § 6A-2-313.

25   (nn)   Apple's sale and promotion of the Nano constitutes a breach of express
26   warranty in violation of S.C. § 36-2-313.

27   (oo)   Apple's sale and promotion of the Nano constitutes a breach of express
28   warranty in violation of S.D. Cod. Laws. § 57A-2-313.

1    (pp)    Apple's sale and promotion of the Nano constitutes a breach of express

2    warranty in violation of Tenn. Code Ann. § 47-2-313.

3    (qq)    Apple's sale and promotion of the Nano constitutes a breach of express

4    warranty in violation of Tex. Bus. & Com. Code Ann. § 2.313.

5    (rr)    Apple's sale and promotion of the Nano constitutes a breach of express

6    warranty in violation of Ut. Code Ann. § 70A-2-313.

7    (ss)    Apple's sale and promotion of the Nano constitutes a breach of express

8    warranty in violation of Vt. Stat. Ann. § 2-313.

9    (tt)    Apple's sale and promotion of the Nano constitutes a breach of express

10    warranty in violation of Va. Code Ann. § 8.2-313.

11    (uu)    Apple's sale and promotion of the Nano constitutes a breach of express

12    warranty in violation of Wa. Ann. 62A.2-313.

13    (vv)    Apple's sale and promotion of the Nano constitutes a breach of express

14    warranty in violation of W. Va. Code § 46-2-313.

15    (ww)    Apple's sale and promotion of the Nano constitutes a breach of express

16    warranty in violation of Wis. Stat. Ann. 402.313.

17    (xx)    Apple's sale and promotion of the Nano constitutes a breach of express

18    warranty in violation of Wyo. Stat. 34.1-2-313.

19    55.    Defendant's conduct injured Plaintiff and members of the proposed Class by

20    breaching its express warranties, thereby causing them to pay a premium price for a product that

21    should not have been on the market and/or should have been lower priced to reflect its lack of

22    durability.

23    56.    Plaintiff and the proposed class members have incurred damages as described herein

24    as a direct and proximate result of the breach and failure of Defendant to honor its express

25    warranty, in that Plaintiff and the proposed class members would not have purchased and/or paid as

26    much for their Nanos had they known the truth about the product.

27

28

1

**THIRD CAUSE OF ACTION**

2

**(Breach Of State Implied Warranties)**

3      57.    The preceding paragraphs of this Complaint are realleged and incorporated by

4    reference and asserted by Plaintiff on behalf of themselved and members of the proposed Class.

5      58.    Defendant sold and promoted Nanos, which they placed into the stream of

6    commerce. Defendant knew or had reason to know of the specific use for which the Nanos were

7    purchased, and it impliedly warranted that Nanos were of merchantable quality and fit for such use.

8    This implied warranty included, among other things (i) a warranty that the Nanos manufactured,

9    supplied, distributed and/or sold by Defendant would not incur extreme scratching; and (ii) a

10   warranty that the Nanos would be fit for their intended use and would not excessively scratch when

11   used in a foreseeable manner for their normal intended use.

12     59.    Plaintiffs and members of the proposed Class reasonably relied upon the expertise,

13   skill, judgment and knowledge of Defendant and upon their implied warranty that Nanos were of

14   merchantable quality and fit for their intended use.

15     60.    Through the conduct alleged herein, Apple has breached the implied warranty of

16   fitness for a particular purpose. The defectively designed Nano was not fit for the particular

17   purpose for which it was purchased by the class members to perform. The class members

18   purchased the Nano for the particular purpose of being durable enough to carry it in places such as

19   their pockets due to its small size. Apple knew that the class members were purchasing the Nano

20   for this particular purpose. Indeed, Apple marketed the Nano as being fit for this particular

21   purpose.

22     61.    Plaintiff and members of the proposed Class relied on Defendant's

23   misrepresentations by purchasing Nanos.

24     62.    Defendant knew or had reason to know that Plaintiff and members of the proposed

25   Class were influenced to purchase Nanos through Defendant's expertise, skill, judgment and

26   knowledge in furnishing Nanos for their intended use.

27

28

63. Nanos were not of merchantable quality and were not fit for their intended use because they are not durable and are susceptible to excessive scratching that, among other things, impairs the readability of the screens.

64. Defendant's actions, as complained of herein, violate various state statutes listed below:

(a) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Ala. Code § 7-2-314.

(b) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Alaska Stat. § 45.02.314.

(c) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Ak. St. § 45.02.314.

(d) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Ariz. Rev. Stat. Ann. § 47-2314.

(e) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Co. Rev. St. § 4-2-314.

(f) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Conn. Gen. Stat. Ann. § 42a-2-314.

(g) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of 6 Del. C. § 2-314.

(h) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of D.C. Stat. § 28:2-314.

(i) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Fla. Stat. Ann. § 672.314.

(j) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Ga. Code Ann. § 11-20-314.

(k) Apple breached its implied warranty that Nanos were of merchantable quality and fit for such use in violation of Haw. Rev. Stat. § 490:2-314.

1          (l)     Apple breached its implied warranty that Nanos were of merchantable

2    quality and fit for such use in violation of Id. Stat. § 28-2-314.

3          (m)     Apple breached its implied warranty that Nanos were of merchantable

4    quality and fit for such use in violation of 810 ILCS 512-314.

5          (n)     Apple breached its implied warranty that Nanos were of merchantable

6    quality and fit for such use in violation of Ind. Code § 26-1-2-314.

7          (o)     Apple breached its implied warranty that Nanos were of merchantable

8    quality and fit for such use in violation of Iowa Code Ann. § 554.2314.

9          (p)     Apple breached its implied warranty that Nanos were of merchantable

10   quality and fit for such use in violation of Kansas Stat. Ann. § 84-2-314.

11         (q)     Apple breached its implied warranty that Nanos were of merchantable

12   quality and fit for such use in violation of Ken. Rev. Stat. § 355.2-314.

13         (r)     Apple breached its implied warranty that Nanos were of merchantable

14   quality and fit for such use in violation of La. Civ. Code Ann. art. 2520.

15         (s)     Apple breached its implied warranty that Nanos were of merchantable

16   quality and fit for such use in violation of 11 Maine Rev. Stat. Ann. § 2-314.

17         (t)     Apple breached its implied warranty that Nanos were of merchantable

18   quality and fit for such use in violation of Md. Com. Law Code Ann. § 2-314.

19         (u)     Apple breached its implied warranty that Nanos were of merchantable

20   quality and fit for such use in violation of Mass. Gen. Laws Ann. 106 § 2-314.

21         (v)     Apple breached its implied warranty that Nanos were of merchantable

22   quality and fit for such use in violation of Mich. Comp. Laws Ann. 440.2314.

23         (w)     Apple breached its implied warranty that Nanos were of merchantable

24   quality and fit for such use in violation of Minn. Stat. Ann. § 336.2-314.

25         (x)     Apple breached its implied warranty that Nanos were of merchantable

26   quality and fit for such use in violation of Miss. Code Ann. § 75-2-314.

27         (y)     Apple breached its implied warranty that Nanos were of merchantable

28   quality and fit for such use in violation of Missouri Ann. Stat. 400.2-314.

1          (z)     Apple breached its implied warranty that Nanos were of merchantable

2    quality and fit for such use in violation of Mont. Code Ann. 30-2-314.

3          (aa)    Apple breached its implied warranty that Nanos were of merchantable

4    quality and fit for such use in violation of Neb. Rev. State. § 2-314.

5          (bb)    Apple breached its implied warranty that Nanos were of merchantable

6    quality and fit for such use in violation of Nev. Rev. Stat. 104.2314.

7          (cc)    Apple breached its implied warranty that Nanos were of merchantable

8    quality and fit for such use in violation of N.H. Rev. Stat. § 382-A:2-314.

9          (dd)    Apple breached its implied warranty that Nanos were of merchantable

10   quality and fit for such use in violation of N.J. Stat. Ann. 12A:2-314.

11         (ee)    Apple breached its implied warranty that Nanos were of merchantable

12   quality and fit for such use in violation of N.M. Stat. Ann. § 55-2-314.

13         (ff)    Apple breached its implied warranty that Nanos were of merchantable

14   quality and fit for such use in violation of N.Y. U.C.C. Law § 2-314.

15         (gg)    Apple breached its implied warranty that Nanos were of merchantable

16   quality and fit for such use in violation of N.C. Gen. Stat. Ann. § 25-2-314.

17         (hh)    Apple breached its implied warranty that Nanos were of merchantable

18   quality and fit for such use in violation of N.D. Stat 41-02-31.

19         (ii)    Apple breached its implied warranty that Nanos were of merchantable

20   quality and fit for such use in violation of Ohio Rev. Code Ann. § 1302.267.

21         (jj)    Apple breached its implied warranty that Nanos were of merchantable

22   quality and fit for such use in violation of Okla. Stat. Ann. tit. 12A, § 2-314.

23         (kk)    Apple breached its implied warranty that Nanos were of merchantable

24   quality and fit for such use in violation of Or. Rev. Stat. § 72.3140.

25         (ll)    Apple breached its implied warranty that Nanos were of merchantable

26   quality and fit for such use in violation of Pa. Stat. Ann. tit. 13, § 2314.

27         (mm)    Apple breached its implied warranty that Nanos were of merchantable

28   quality and fit for such use in violation of R.I. Stat. § 6A-2-314.

1      (nn)    Apple breached its implied warranty that Nanos were of merchantable

2 quality and fit for such use in violation of S.C. § 36-2-314.

3      (oo)    Apple breached its implied warranty that Nanos were of merchantable

4 quality and fit for such use in violation of S.D. Cod. Laws. § 57A-2-314.

5      (pp)    Apple breached its implied warranty that Nanos were of merchantable

6 quality and fit for such use in violation of Tenn. Code Ann. § 47-2-314.

7      (qq)    Apple breached its implied warranty that Nanos were of merchantable

8 quality and fit for such use in violation of Tex. Bus. & Com. Code Ann. § 2.314.

9      (rr)    Apple breached its implied warranty that Nanos were of merchantable

10 quality and fit for such use in violation of Ut. Code Ann. § 70A-2-314.

11      (ss)    Apple breached its implied warranty that Nanos were of merchantable

12 quality and fit for such use in violation of Vt. Stat. Ann. § 2-314.

13      (tt)    Apple breached its implied warranty that Nanos were of merchantable

14 quality and fit for such use in violation of Va. Code Ann. § 8.2-314.

15      (uu)    Apple breached its implied warranty that Nanos were of merchantable

16 quality and fit for such use in violation of Wa. Ann. 62A.2-314.

17      (vv)    Apple breached its implied warranty that Nanos were of merchantable

18 quality and fit for such use in violation of W. Va. Code § 46-2-314.

19      (ww)    Apple breached its implied warranty that Nanos were of merchantable

20 quality and fit for such use in violation of Wis. Stat. Ann. 402.314.

21      (xx)    Apple breached its implied warranty that Nanos were of merchantable

22 quality and fit for such use in violation of Wyo. Stat. 34.1-2-314.

23      65.    Plaintiff and the proposed class members have incurred damages as described herein

24 as a direct and proximate result of the breach and failure of Defendant to honor its implied

25 warranty in that Plaintiff and the proposed class members would not have purchased and/or paid as

26 much for their Nanos had they known the truth about the product.

27

28

## FOURTH CAUSE OF ACTION

### (Violation Of State Negligent Misrepresentation Common Laws)

66.     The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of himself and members of the proposed Class.

67.     Defendant made a series of misrepresentations and material omissions, as alleged herein. Its statements were material, false, deceptive, and misleading and omitted material facts necessary to make the statements not misleading, and such material misrepresentations and omissions were a result of Defendant's negligence, in violation of all state negligent misrepresentation common laws.

68.     Defendant owed a duty to Plaintiffs and members of the proposed Class to exercise reasonable care in making representations about Nanos.

69.     Plaintiffs and the proposed class members relied (or should be presumed to have relied) on Defendant's material misrepresentations in purchasing Nanos.  As a result of their justifiable reliance, Plaintiffs and members of the proposed Class were induced to and did purchase Nanos. Plaintiffs' reliance and the proposed class members' reliance were reasonably foreseeable by Defendant (and, in fact, that is why Defendant made the misrepresentations that it did).

70.     As a direct and proximate result of the negligent misrepresentations made by Defendant, Plaintiffs and the proposed class members have been damaged.

## FIFTH CAUSE OF ACTION

### (Violation Of State Unjust Enrichment Common Laws)

71.     The preceding paragraphs of this complaint are realleged and incorporated by reference and asserted by Plaintiffs on behalf of himself and members of the proposed Class.

72.     To the detriment of Plaintiffs and members of the proposed Class, Defendant has been, and continues to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, *inter alia*, payments for Nanos.

73.     Defendant has unjustly benefited through the unlawful and/or wrongful collection of, *inter alia*, payments for Nanos and continues to so benefit to the detriment and at the expense of Plaintiffs and members of the proposed Class.

1    74.    Accordingly, Plaintiffs and members of the proposed Class seek full restitution of

2  Defendant's enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or

3  wrongful conduct alleged herein.

4

5                                              **PRAYER FOR RELIEF**

6    WHEREFORE, Plaintiffs and the proposed class members request that the Court enter an

7  order or judgment against Defendant including the following:

8    A.    Certification of the action as a Class Action pursuant to Rule 23(b)(2) of the Federal

9  Rules of Civil Procedure with respect to Plaintiff's claims for injunctive relief, and Rule 23(b)(3)

10  of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of

11  Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

12    B.    Damages in the amount of monies paid for Nanos;

13    C.    Actual damages, statutory damages, punitive or treble damages, and such other

14  relief as provided by the statutes cited herein;

15    D.    Prejudgment and post-judgment interest on such monetary relief;

16    E.    Equitable relief in the form of restitution and/or disgorgement of all unlawful or

17  illegal profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct

18  alleged in herein;

19    F.    Other appropriate injunctive relief;

20    G.    The costs of bringing this suit, including reasonable attorneys' fees; and

21    H.    All other relief to which Plaintiffs and members of the proposed Class may be

22  entitled at law or in equity.

23

24

25

26

27

28

1   DATED: October 25, 2005

2                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                LEE M. GORDON
                                ELAINE T. BYSZEWSKI

4

5                               By:  ELAINE T. BYSZEWSKI
                                700 South Flower Street
6                               Suite 2940
                                Los Angeles, CA 90017
7                               (213) 330-7149
                                (213) 330-7152 – Fax
8
                                STEVE W. BERMAN
9                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                1301 Fifth Avenue
10                              Suite 2900
                                Seattle, WA 98101
11                              206.623.7292
                                206.623.0594 – Fax
12
                                DAVID P. MEYER
13                              PATRICK G. WARNER
                                DAVID P. MEYER & ASSOCIATES CO., LPA
14                              401 North Front Street, Suite 350
                                Columbus, Ohio 43215
15                              (614) 224-6000
                                (614) 224-6066 – Fax
16
17                              *Attorneys for Plaintiffs and the Proposed Class*

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

CLASS ACTION COMPLAINT                    -30-

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED: October 25, 2005

HAGENS BERMAN SOBOL SHAPIRO LLP
LEE M. GORDON
ELAINE T. BYSZEWSKI

By: ELAINE T. BYSZEWSKI
700 South Flower Street
Suite 2940
Los Angeles, CA 90017
(213) 330-7149
(213) 330-7152 – Fax

STEVE W. BERMAN
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101
206.623.7292
206.623.0594 – Fax

DAVID P. MEYER
PATRICK G. WARNER
DAVID P. MEYER & ASSOCIATES CO., LPA
401 North Front Street, Suite 350
Columbus, Ohio 43215
(614) 224-6000
(614) 224-6066 – Fax

*Attorneys for Plaintiffs and the Proposed Class*